[No. 17711–7–I.   Division One.   June 8, 1987.]

THE STATE OF WASHINGTON, *Respondent*, v. EMERY FRANK HARRIS, *Appellant*.

*William McCool* and *Andrea Butaud,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine* and *Paul Stern, Deputies,* for respondent.

PEKELIS, J.—Emery Frank Harris appeals his conviction for three counts of indecent liberties. He assigns error to the trial court's "to convict" instructions, which did not require proof of venue. He also assigns error to the denial of his motion to act as cocounsel, and to the denial of two motions for mistrial.

## I

Harris was charged by information with three counts of indecent liberties. The information alleged that on or about June 1, 1985, Harris had sexual contact with three children, all under the age of 14, in violation of RCW 9A.44.100-(1)(b). The information further alleged that the crimes were committed in Snohomish County, Washington.

Harris made two pretrial motions relevant to this appeal. First, he made a motion to be permitted to act as cocounsel, which was denied. The other motion pertained to the admission of hearsay testimony under RCW 9A.44.120, the child hearsay exception statute. Harris moved to exclude any out-of-court statement made by one of the victims describing an act of sexual contact performed by Harris on a different victim. This motion was granted.

According to trial testimony, Harris went to the Lynnwood home of one of the victims, R, on the evening of June 1, 1985. R and her brother Z were there with two other girls, J and C.[1] Harris asked R's mother, an acquaintance of his, if he could take the children out for a treat, such as

---

[1] The three girls ranged in age from 8 years to 12. Z was 6.

ice cream or candy.

Harris took the children for a drive, stopping along the way to buy them gifts and refreshments. During the drive he let each child have a turn steering the automobile while the others sat in the backseat. Harris put his hand on the vaginal area of each of the three girls as each took her turn steering. He told the young boy, Z, that he could touch the girls, too. Two of the girls stated that these acts occurred in Woodinville, an unincorporated area located mainly in King County. However, a detective who retraced the route with the three girls testified that they were in Snohomish County when the girls pointed out the place where the touching began.

During trial, Harris was being escorted back to jail in handcuffs when he encountered two jurors in a hallway. Although he attempted to cover his hands, Harris felt that the jurors might have noticed his handcuffs. On this basis he made a motion for mistrial, which was denied. The court did offer to give the jury a cautionary instruction, but defense counsel refused the offer.

After the State rested its case, Harris moved to dismiss on the ground that the State had failed to prove that venue was proper in Snohomish County. The motion was denied. Later, in instructing the jury as to the elements of indecent liberties, the court adopted the State's proposed "to convict" instructions instead of Harris'. While Harris' proposed instructions would have required the jury to find that the crimes occurred in Snohomish County, the court's instructions merely required the jury to find that the crimes occurred in the State of Washington. The jury found Harris guilty on all three counts.

## II

Harris first assigns error to the court's "to convict" instructions, which did not require the State to prove that the crimes occurred in Snohomish County. As a general rule, proof of venue is necessary in a criminal prosecution. *See State v. Hardamon*, 29 Wn.2d 182, 188, 186 P.2d 634

(1947); *State v. Escue,* 6 Wn. App. 607, 495 P.2d 351 (1972). However, venue is not an element of the crime, *Hardamon,* 29 Wn.2d at 188; *Escue,* 6 Wn. App. at 607, and it need not be proved beyond a reasonable doubt, *State v. Marino,* 100 Wn.2d 719, 727, 674 P.2d 171 (1984).[2]

■ Furthermore, proof of venue may be waived. *Hardamon,* 29 Wn.2d at 188; *Escue,* 6 Wn. App. at 608. When, as in this case, there is reasonable doubt whether an offense has been committed in one of two or more counties, the action may be commenced in any such county. CrR 5.1(b). In such a case, the defendant has the right to change venue to any other county in which the offense may have been committed. CrR 5.1(c). However, any objection to venue must be made as soon as the defendant has knowledge upon which to make it, or else the objection is waived. CrR 5.1(c); *State v. Price,* 94 Wn.2d 810, 815-16, 620 P.2d 994 (1980).

In the case sub judice, the defendant heard testimony at a pretrial hearing on September 16, 1985, which indicated that the offenses might have been committed in King County.[3] At that time he had knowledge upon which to make an objection to venue in Snohomish County under CrR 5.1(c). Nevertheless, instead of making an objection to venue as soon as he had knowledge upon which to make it, Harris waited until the end of the State's case on Septem-

---

[2]Much of the confusion over these two propositions is probably due to WPIC 4.21, which implies that venue is an element of the crime which must be proved beyond a reasonable doubt. However, the comment to WPIC 4.21 correctly states that this is not the case.

[3]At the pretrial hearing, C testified that she thought the touching occurred in Woodinville because she saw signs that said "Woodinville." The police detective who interviewed C shortly after the incident testified that C had made the same statement to him. At trial, the only additional testimony indicating that the offenses might have been committed outside Snohomish County was that of J, who said that she, too, saw a sign that said "Woodinville" near the place where the touching occurred.

ber 18.[4] By failing to make a timely objection as required by CrR 5.1(c), Harris waived *any* objection to venue, *see Price,* 94 Wn.2d at 816, including an objection to the court's "to convict" instructions on the ground that they failed to require proof of venue.

## III

Next, Harris assigns error to the trial court's denial of his motion to act as cocounsel. While the Sixth Amendment grants a criminal defendant the right to conduct his own defense, *Faretta v. California,* 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975), there is no constitutional right, either state or federal, to the sort of "hybrid" representation Harris has requested. *McKaskle v. Wiggins,* 465 U.S. 168, 183, 79 L. Ed. 2d 122, 104 S. Ct. 944 (1984); *State v. Hightower,* 36 Wn. App. 536, 540–41, 676 P.2d 1016, *review denied,* 101 Wn.2d 1013 (1984). Such requests are not favored by the law, and should be granted only where there has been a "'substantial showing'" that "'the cause of justice will thereby be served . . .'" *Hightower,* 36 Wn. App. at 541–42 (quoting *People v. Mattson,* 51 Cal. 2d 777, 336 P.2d 937, 952 (1959)). Whether to allow hybrid representation is within the sound discretion of the trial court. *Hightower,* 36 Wn. App. at 541.

Since Harris has not provided this court with a report of the proceedings at which his motion was argued, we have only the bare assertion contained in his written motion to the trial court that by acting as cocounsel he could "more zealously" defend himself. This falls far short of the "substantial showing" required before such a motion should be granted. *See Hightower,* 36 Wn. App. at 541. Thus, there is no basis to conclude that the trial court abused its discretion in denying Harris' motion.

---

[4]Furthermore, Harris' belated "objection" was not in the form of a motion for change of venue, as the rule contemplates. Instead, he moved for dismissal based on the erroneous assumption that venue is an element of the crime which the State had failed to prove.

## IV

Harris moved for a mistrial after a detective testified as to C's out–of–court statement that "Frank [Harris] told [Z] that he could touch us girls in our privates, too." He assigns error to the trial court's denial of his motion, arguing that the detective's testimony violated the order in limine and, in addition, that it was not admissible under RCW 9A.44-.120, the child hearsay exception statute.

RCW 9A.44.120 provides, in pertinent part:

A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in dependency proceedings under Title 13 RCW and criminal proceedings in the courts of the state of Washington . . .

The statute provides an exception to the hearsay rule, but limits that exception to "[a] statement made by a child . . . describing any act of sexual contact performed *with or on the child* by another". (Italics ours.) RCW 9A.44.120. It does not by its terms apply to a statement by a child describing an act of sexual contact performed on a *different* child. *See State v. Hancock,* 46 Wn. App. 672, 678, 731 P.2d 1133 (1987).

It is the latter type of statement which Harris addressed in his motion in limine. The court was asked to and did exclude out–of–court statements by C describing acts of sexual contact *performed by Harris* on the other girls. However, the statement in question does not describe an act performed by Harris; rather it describes an act which Harris told Z that he, Z, could perform if he wished.[5] Thus, the statement was not a violation of the order in limine.

On the other hand, we agree that the detective's testimony relating C's report of Harris' statement is hearsay. C's statement is not within the scope of the child hearsay exception statute because it does not describe an act of sexual contact performed *with or on C. See Hancock,* 46

[5]There was no testimony that any such act was ever performed by Z.

Wn. App. at 678. However, a mistrial should be granted only when "the defendant has been so prejudiced that nothing short of a new trial can insure that defendant will be tried fairly." *State v. Gilcrist*, 91 Wn.2d 603, 612, 590 P.2d 809 (1979). In this case, the admission of C's statement through the detective's testimony was clearly not grounds for a mistrial. The content of C's statement was properly before the jury anyway since each of the three girls testified as to what Harris told Z.[6] *Cf. Hancock*, 46 Wn. App. at 679 (admission of victim's out-of-court statement was harmless error, where content of statement was properly before jury through victim's own testimony).

## V

Harris also contends that the trial court should have granted a mistrial because two jurors *might* have seen him in handcuffs. However, even if it were certain that the jurors had seen Harris in handcuffs, this by itself would not warrant a mistrial. *See State v. Peyton*, 29 Wn. App. 701, 714, 630 P.2d 1362, *review denied*, 96 Wn.2d 1024 (1981). There is nothing in the record to indicate that Harris was prejudiced, so his motion for a mistrial was properly denied. *See State v. Ollison*, 68 Wn.2d 65, 68–69, 411 P.2d 419, *cert. denied*, 385 U.S. 874 (1966).

## VI

In addition to the issues raised through his counsel, Harris raises several issues in his pro se brief. First, he asserts that certain witnesses were "coached" by the stepfather of one of the victims, and that his trial attorney failed to vigorously object to this alleged coaching. He argues that he was denied various "due process" rights at his sentencing hearing, including the right to a jury trial, the right to cross-examine witnesses, and the right to remain silent. He also argues that the trial court erred in refusing to grant a continuance until such time as a verbatim report of the

---

[6] This testimony was not objected to, and in any case was not hearsay. *See* ER 801(d)(2)(i).

trial proceedings would be available. We have examined these arguments and find no merit in any of them.

Finally, Harris argues that the trial court, in setting his sentence at the top of the presumptive range, erroneously took into account factors already taken into account by the Legislature in determining the presumptive range. In support of this proposition, he cites *In re Myers,* 105 Wn.2d 257, 266, 714 P.2d 303 (1986). However, *Myers* merely held that factors used by the Legislature in setting the presumptive range may not be used to justify a *departure* therefrom. It did not affect the general rule that a sentence within the presumptive range is not appealable. *See* RCW 9.94A.210(1).

Affirmed.

SCHOLFIELD, C.J., and SWANSON, J., concur.

Review denied by Supreme Court September 1, 1987.