IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37911-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOMMY JOEL P QUIROZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

STAAB, J. — A jury found Tommy Quiroz guilty of attempted second degree child

rape and communicating with a minor for immoral purposes. On appeal, Quiroz argues

that the trial court erred by changing the incident date in the to-convict jury instruction

during his attorney's closing argument. He contends that the alleged date of the incident

became the law of the case once the court accepted the instructions. He also argues that

changing the date allowed the State to introduce a new theory of culpability during

closing arguments. We disagree and affirm Quiroz's convictions.

BACKGROUND

In December 2018, the Washington State Patrol conducted what is commonly referred to as a "Net Nanny" operation in Kittitas County. The operation seeks to identify and arrest those individuals who respond to offers to engage in sex with children and take one or more substantial steps to do so. Quiroz was one of the individuals apprehended in the December 2018 Net Nanny operation in Ellensburg. He was charged by information with attempted rape of a child in the second degree, and with communicating with a minor for immoral purposes; both crimes occurring on or about December 17, 2018.

Quiroz's three-day trial commenced on September 1, 2020. Throughout the trial, the jury was informed that each crime had occurred on or about December 7, 2018. In its opening statement, the State told the jury that Mr. Quiroz was charged with crimes that occurred in December 2018. In the course of testimony, every witness, including Quiroz, referenced or acknowledged December 2018 as the timeframe of the events for which they were there testifying. The jury also heard Quiroz's post-arrest interview with law enforcement. At the beginning of the recording, the officer conducting the interview stated that the interview was occurring on December 17, 2018, beginning at 1833 hours. Following the taped interview, Quiroz provided an apology letter acknowledging what he had done. That letter was signed and dated by Quiroz as "12/17/2018." Report of Proceedings (RP) at 402.

Despite the evidence produced at trial, the State's to-convict jury instruction for the attempted rape charge that was read to the jury indicated that the incident date was December 17, <u>2020</u>.  Clerk's Papers (CP) at 98; RP at 474.  Defense counsel did not object to any of the State's proposed instructions, other than noting the "defendant not compelled to testify" instruction should be withdrawn.  RP at 463.  The trial court read the instructions verbatim to the jury.  RP at 467-78.  During closing arguments, defense counsel focused on the to-convict jury instruction:

> [DEFENSE COUNSEL]: The state has the burden.  The judge is instructing you on—the law.  This is what it requires in order for you to convict him.
>
> Well, right off the bat, on Instruction No. 8, to convict the defendant of a crime of attempted—rape of a child in the second degree, that on or about December 17, 2020 —
>
> [PROSECUTOR]: Judge, I'd object.  It's obviously a typo in the instruction.
>
> [DEFENSE COUNSEL]: Judge, these are the instructions.  I get to argue from them.  It is the law of the case.
>
> THE COURT: Are you moving to have that amended, counsel?
>
> [PROSECUTOR]: Yes, sir.  I — I think it's (inaudible)
>
> THE COURT: Which number?
>
> [PROSECUTOR]: Eight.
>
> THE COURT: Yeah.  That should read — 2018.
>
> [PROSECUTOR]: Thank you, Judge.

3

RP at 491. Following the State's rebuttal argument, defense counsel objected to amending Instruction No. 8. RP at 497. The trial court responded, "Sure. And you didn't bring it up earlier, which is your right, and—I didn't notice until your argument. So, —I should have caught it earlier as well." *Id.* Neither party objected to Instruction No. 8 as proposed by the State before it was read to the jury. CP at 97. Before sending the instructions back with the jury, the court amended the instruction by changing the date in the first element to "December 17, 2018." CP at 26; RP at 491-92.

## ANALYSIS

### A. JURY INSTRUCTIONS

On appeal, Quiroz argues that when the trial court accepts the jury instructions without objection by either party, the instructions become the law of the case. The State must then prove the elements as set forth in the instructions. He contends that the trial court in this case erred by changing the date of the to-convict instruction at the start of defense counsel's closing arguments. He also suggests that changing the alleged date of the incident during closing arguments allowed the State to introduce a new theory of the culpability that undermined defense counsel's "bulletproof" argument.

Under the law of the case doctrine, unchallenged jury instructions become the law of the case. *State v. Hickman*, 135 Wn.2d 97, 101-02, 954 P.2d 900 (1998). "In criminal cases, the State assumes the burden of proving otherwise unnecessary elements of the

4

offense when such added elements are included without objection in the 'to-convict' instruction." *Id*. (citing *State v. Lee*, 128 Wn.2d 151, 159, 904 P.2d 1143 (1995)).

Parallel to the law of the case doctrine is the discretion trial courts are afforded to correct nonprejudicial mistakes in the to-convict jury instruction. *See State v. Garcia*, 177 Wn. App. 769, 313 P.3d 422 (2013). In *Garcia*, the to-convict jury instruction read "first degree robbery" instead of "serious offense," as the parties had earlier agreed. *Id*. at 772-73. The trial court corrected the instruction after closing arguments and denied defense counsel's motion for a mistrial. *Id*. at 774-75. Division Two affirmed, noting that "the jury's temporary exposure to the improper instruction was not such a serious trial irregularity that it could not be cured by an instruction to disregard." *Id*. at 772.

In this case, Quiroz argues that the cutoff point for objecting to an incorrect instruction is before closing arguments. He does not cite any case law to support this temporal deadline. In *State v. Hobbs*, 71 Wn. App. 419, 424, 859 P.2d 73 (1993), the charging information and the to-convict instruction included an unnecessary element of venue. Defense counsel recognized the issue during trial and structured her questions accordingly. In closing, defense counsel pointed out that the State had failed to prove the crimes were committed in King County. After the jury began deliberating, the court allowed the State to amend the information and the to-convict jury instruction. Division One held that amending the to-convict jury instruction after closing arguments and during deliberations prevented counsel from rethinking her cross-examination strategy. *Id*. at

5

425. Nonetheless, Division One correctly rejected the defendant's invitation to find that the erroneous instruction constituted the law of the case once the jury began deliberating. Instead, the court reversed the conviction without prejudice and remanded for a new trial. *Id*.

In this case, the trial court did not abuse its discretion. The erroneous date in the to-convict instruction was a scrivener's error, not a misunderstanding of the law. The corrected instruction conformed to the information and the evidence produced at trial. The instruction was corrected before the jury began deliberating. The amendment did not add new law or a new theory to the case.

B.     STATEMENT OF ADDITIONAL GROUNDS

In his statement of additional grounds, Quiroz alleges that the court erred in allowing the State to replace the testimony of retired Detective Sergeant Carlos Rodrigues with that of Detective Sergeant Dan McDonald. This replacement took place immediately prior to the start of the trial. Quiroz further alleges that the State committed a *Brady*[1] violation in denying Quiroz the opportunity to cross-examine Detective Sergeant Rodrigues. To support his arguments, Quiroz submits information in his declaration outside the record on appeal. Because this is a direct appeal, we will not consider evidence outside the record. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d

---

[1] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

No. 37911-6-III
*State v. Quiroz*

1251 (1995). Quiroz can raise these issues in a personal restraint petition, where he can supplement the record to support his claims. *Id.* *See also* RAP 16.4.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, J.

7